REILLY, P.J.[1]
¶ 1 B.C. appeals from an order for extension of commitment and from an order for involuntary medication and treatment. B.C. argues that the record was insufficient to support the extension of the commitment and order for involuntary medication as "B.C.'s eccentric behavior was an insufficient basis to extend the commitment." For the reasons set forth below, we affirm the orders of the circuit court.
¶ 2 B.C. is a prison inmate with schizophrenia who had previously been under a mental commitment order. Winnebago County filed a petition on February 1, 2018, for an extension of commitment order and an order for medication and treatment for one year. The circuit court held a hearing on February 22, 2018, where Dr. Thomas John Michlowski, B.C.'s psychologist at the Wisconsin Resource Center, testified that B.C.'s delusions include beliefs that his mail is being stolen, that his food is being poisoned, that he is "infected with AIDS and other viruses," and that the corrections officers are "raping babies all hours of the day" and there is video evidence to prove this.[2] Michlowski expressed his belief that B.C. is a proper subject for treatment and that the DOC had been "unsuccessful" in convincing him to "agree to follow through with treatment on a voluntary basis," but that his treatment needs could be met on an outpatient basis in the prison. Michlowski testified that he had explained the advantages and disadvantages of medication to B.C., but "he doesn't believe [his mental health is] a problem so he doesn't accept the explanation" and, thus, he is "substantially incapable" of understanding the advantages and disadvantages of medication to his own condition.
¶ 3 B.C. testified on his own behalf, explaining to the court that he is not mentally ill and that he was being medicated "for immaturity." At the hearing, B.C. argued that he may need help "organizing my thought process, my thinking," which he suggested could be resolved through "adequate eating, adequate sleeping, exercise daily, deep breathing, [and] even stretching." The circuit court found that the County had met its burden to prove that B.C. met the necessary statutory requirements for an extension of commitment and order for involuntary medication and treatment. B.C. appeals.
Order for Extension of Commitment
¶ 4 This case involves the extension of a mental commitment under WIS. STAT. § 51.20(1)(ar), for inmates of state prisons. To establish that an inmate is a proper subject for extension of his commitment under § 51.20(1)(ar), the County must prove: (1) the individual is an inmate of a state prison;[3] (2) the individual is mentally ill; (3) the individual "is a proper subject for treatment and is in need of treatment"; (4) that "appropriate less restrictive forms of treatment have been attempted with the individual and have been unsuccessful"; and (5) that "the individual has been fully informed about his or her treatment needs, the mental health services available to him or her and his or her rights under this chapter and that the individual has had an opportunity to discuss his or her needs, the services available to him or her and his or her rights with a licensed physician or a licensed psychologist."[4] Sec. 51.20(1)(ar), (13)(e). Whether the County has met its burden is a mixed question of law and fact. Outagamie Cty. v. Melanie L. , 2013 WI 67, ¶¶ 37-39, 349 Wis. 2d 148, 833 N.W.2d 607. We will not disturb the circuit court's findings of fact unless clearly erroneous, but whether the County ultimately met its burden of proof requires us to independently apply facts to the statutory standard. Id.
¶ 5 Michlowski testified that he had been treating and evaluating B.C. at the Wisconsin Resource Center, and based on his observations and review of B.C.'s medical records, indicated that B.C. is suffering from schizophrenia with "a significant thought disorder of a delusional nature." Michlowski further testified that B.C. is a proper subject for treatment; is in need of treatment as he is "grossly" impaired when not under a treatment order; that the DOC has continued to offer B.C. services on a voluntary basis, such as individual and group therapy and voluntary medications, but has been unsuccessful in getting him to follow through with treatment on a voluntary basis; and that he advised B.C. of his rights and the services afforded to him in DOC and had an opportunity to discuss them with B.C. B.C. generally disagreed with the idea that he was mentally ill or in need of treatment, but did not dispute that Michlowski had discussed treatment options and the advantages and disadvantages of medication with him. Based on the record before this court, we do not find that the circuit court's findings of fact are clearly erroneous, and we agree that the County met its burden to establish the statutory elements by clear and convincing evidence. We will not upset the circuit court's conclusion on appeal.
Order for Involuntary Medication and Treatment
¶ 6 In order to establish that B.C. is not competent to refuse medication or treatment under WIS. STAT. § 51.61(1)(g)4., the County must prove by clear and convincing evidence that "because of mental illness ... and after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual, one of the following is true":
a. The individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives.
b. The individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness, developmental disability, alcoholism or drug dependence in order to make an informed choice as to whether to accept or refuse medication or treatment.
Id. Pursuant to that statute, the County "bears the burden of proving [B.C.] incompetent to refuse medication by clear and convincing evidence." Melanie L. , 349 Wis. 2d 148, ¶ 37 (citing WIS. STAT. § 51.20(13)(e) ). "We will not disturb a circuit court's factual findings unless they are clearly erroneous." Id. , ¶ 38. We will also "accept reasonable inferences from the facts available to the circuit court."Id. We review the facts as applied to the statute independently. Id. , ¶ 39.
¶ 7 We conclude that the circuit court did not err and the evidence supports the involuntary medication order. According to Michlowski, B.C. does not believe he has a mental illness, believes he "does not need medication," and would not take the medication unless ordered to do so. As a result, Michlowski testified that in his opinion B.C. is "[s]ubstantially incapable" of understanding his condition and making an informed choice about his medications and treatment. Michlowski testified that he explained all the advantages and disadvantages of the medications to B.C., and B.C. confirmed that was the case and was able to recite some of the side effects of the medications, including the discussion he and Michlowski had concerning how the medications would help him concentrate and "organiz[e] [his] thought process." Michlowski testified that as an alternative to medication, individual psychotherapy had been attempted while B.C. was with the DOC, but it was Michlowski's opinion that "it's unrealistic to think that psychotherapy could correct" B.C.'s delusional thinking because it is "of a very severe degree."
¶ 8 B.C. argued at the hearing that "the doctors" were "limit[ing] their assessment of everything to only paperwork and what other doctors and staff have fabricated. [The doctors] kind of mutated my complaints." B.C. is refusing medication because he believes proper eating, adequate sleep, and deep breathing will restore his mental health.[5]
¶ 9 The statute illustrates that an individual is not competent to refuse medication if that individual is "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness ... in order to make an informed choice as to whether to accept or refuse medication or treatment." WIS. STAT. § 51.61(1)(g) 4.b. The court in Melanie L. explained that " 'applying an understanding' requires a person to make use of his or her understanding for his or her condition. Put another way, 'applying an understanding' requires a person to make a connection between an expressed understanding of the benefits and risks of medication and the person's own mental illness." Melanie L. , 349 Wis. 2d 148, ¶ 71. As the court postulated, "It may be true that if a person cannot recognize that he or she has a mental illness, logically the person cannot establish a connection between his or her expressed understanding of the benefits and risks of medication and the person's own illness." Id. , ¶ 72. We agree with the circuit court that B.C. is "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his ... mental illness ... in order to make an informed choice" about his treatment options as his failure to acknowledge his mental illness means he lacks insight into his condition and is incapable of establishing a connection between the benefits and risks for his own mental health. The record supports this finding, and we find no clear error in the circuit court's decision to extend the involuntary medication order.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(d) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Michlowski testified that B.C. came from the Department of Corrections (DOC) to the Wisconsin Resource Center for the purpose of the petition for an extension. During that time, Michlowski was able to observe and evaluate B.C., as well as review his mental health records.

There is no dispute that B.C. is an inmate of a state prison.

B.C. first argued to this court in his brief-in-chief that this case fell under the purview of Wis. Stat. § 51.20(1)(am), and an extension of his mental commitment was inappropriate as "there was no indication that B.C. acted dangerously toward himself and others as a result of [his delusional] beliefs." As B.C. later acknowledged, the County is not required to establish dangerousness as an element under § 51.20(1)(ar).

B.C.'s only other argument is that "Michlowski may have 'recently' given B.C. the statutorily required explanation. However, 'recently' was not defined or placed in any temporal context. The County's brief did not explain when the explanation was provided prior to the February 22, 2018 hearing." B.C. notes that in Melanie L. , the court explained that "[t]he explanation should be timely, and, ideally, it should be periodically repeated and reinforced. Medical professionals and other professionals should document the timing and frequency of their explanations so that, if necessary, they have documentary evidence to help establish this element in court." Outagamie Cty. v. Melanie L. , 2013 WI 67, ¶ 67, 349 Wis. 2d 148, 833 N.W.2d 607. B.C. did not contest the timing of Michlowski's explanation of the advantages or disadvantages at the hearing, and he acknowledged that the discussion took place. The statute does not require a specific time period, and the record reflects that B.C. was transferred to the Wisconsin Resource Center for the purpose of evaluation by Michlowski for the extension petition, which was filed in February and the hearing was held that same month. B.C. fails to develop an argument that "recently" does not meet the requirement that the explanation be "timely." See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).